Chief Justice Bibb
delivered the Opinion of the Court,
Upon bill filed by Martin Everheart, executor of Martin Everheart, deceased, the court decreed against Leigh, that a release and assignment held by him, purporting to have been executed by the testator, should be delivered up to be cancelled, as-not the act or writing of the testator. From this decree Leigh has appealed. The other subjects of complaint (being decreed against the complainant) are not before the court, and need not be stated.
In this court two questions arc made by the counsel for Leigh—1st, the jurisdiction of a, court of equity to decree the release to be delivered up to be cancelled, upon the case stated in the bill.
Second, As to the question of fact.
1st, The release and assignment relates to certain debts due to the testator and Leigh in Louisiana, up *380 on an adventure as partners in a boat toad of produce, sent from Washington county, in 1819, and to monies collected or to be. collected from that adventure, to them or either of them; and the paper alleged to be forged, purports, for natural love and affection his daughter Polly, the wife of Leigh, and because he had not advanced her as he had his other two daughters, to release and assign to his daughter Polly and her husband, Henry Leigh, all his interest in those monies, collected or to he collected, and to bar all claims against them, up to the date thereof, 2nd June, 1321, To perpetuate the evidence of the execution of this release and assignment, Leigh had exhibited his bill against said Martin Everheart, executor, and Sarah Everheart, executrix, of the testator, Martin Everheart, and against the heirs, and distributees; to which the executor had answered, and depositions had been taken. To these proceedings Martin Everheart, in his bill refers.
Bill of Leigh against the executors of Everhart, to perpetuate the evidence of the execution of a release, and their bill against him to have it cancelled as forged.
Equity has jurisdiction, on the bill of the executor, to order a forged deed of the testator in the hands of one who was his partner, now a distributee, purporting to assign over all his interest in the partnership debts, and releasing the demands against him, to be delivered up and cancelled—
Quere: whether the chancellor will decree a deed which appears on its face to be void to be cancelled.
*380 As this assignment and release related to partnership debts, which, were in the hands of Leigh, and property to be collected by him as the survivor, and also to other matters concerning the interests of the plaintiff as executor, and affecting his interest as a distributee, we think the court had jurisdiction to order it to be cancelled if void, and delivered to the executor, whose interests were liable to be affected by it.
Where, deeds have appeared void on their face, the decisions have oscillated as to the propriety of a decree for their surrender. Some of the chancellors, supposing that in such cases, there was no ground for interfering, because the production of the instrument at law would defeat the demand upon it. Others have decreed such deeds to be delivered up, upon the ground that although they could not be useful to the party against whom the surrender is demanded, yet they might be prejudicial to the interests of the other party; they might defeat the ends of justice they might form a cloud upon the title or interests of the parties seeking the relief. Precedents are not wanting where deeds, not appearing void on their face, have been decreed *381 to delivered up to the party against whom they might be prejudicial.
—Where the nullity of the deed does not appear on its face, but must be provided by evidence aliunde.
Cases in England since ’76 not authority in, but are used out of court.
In a bill for the surrender of a forged paper, the defendant cannot be required to answer as to the forgery
Where the deed does turf appear to be void on its face, but its want of obligatory effect depends on proof aliunde, and on collateral circumstances, there seems to be great propriety in the exercise of jurisdiction by a court of chancery, in ordering it to be delivered up.
The act of 1807, Chap. 7, p. 28, enacts, “That reports and books containing adjudged cases in the Kingdom of Great Britain, which decisions have taken place since the 4th July, 1776, shall not he read nor considered as authority in any of the courts of this Commonwealth.” This prohibition places decisions of such foreign courts exactly where they ought to stand, in reference to other courts, not subordinate and subject to their control. As obligatory rules, by force of authority, they have neme. But so far as the reasoning and illustrations of principles, contained in those reports can enlighten the understanding and persuade the judgment, they are useful, and have been used out of court. The leading cases upon this question of jurisdiction, are decided since 1776 — and may be found in a note to the case of Ryan vs McMath, 3 Bro. Ch. c. 18 — in the notes, 1 Maddox Chan. 184-87 — and in Cooper’s Equity Pleadings.
It has been questio vexata, but we incline to the opinion that the jurisdiction ought to be exercised, under the regulations and terms imposed upon the complainants in analogous cases, in this case no answer as to the forgery, was sought from the defendant; it was waived as to that, expressly, in the bill,- there was no plea, nor demurrer, nor objection, but the defendant submitted to the jurisdiction, and did in fact answer, denying the forgery. In the case of the Earl of Suffolk vs Green and others, 1 Atk. 451, Lord Chancellor Hardwicke seems to be of opinion, that a man may bring a bill to perpetuate testimony in many cases, without waiving the penalty, or offering to pay, where he could not bring a bill for relief without waiving the penalty, or offering to pay, “as in waste, or in the case of a forg *382 ed deed,” or in cases of insurances as to fraudulent losses, although subject to a penalty, or oven felonious. As.in usury,, so in other cases of penalty and forfeiture. &c. the defendant may protect himself from any answer or discovery, except upon terms.
—The party may frame his bill to perpeluate the evidence of the forgery only, or may add a prayer to have the paper surrendered.
Decided on evidence that the instrument is not proved to be a forgery.
Forgery of a deed or other instrument fs, of itself, a gross fraud upon' the person whose seal or signature ¡s forged. And there seems to be no good sense in refusing relief against this kind of fraud,,, when other frauds, less aggravated, are relieved against by ordering the deeds or papers to he delivered up to be cancelled. That a court will not compel an answer by way of discovery, touching the is true. But. because a discovery will not be compelled, does it follow that every other relief shall be denied, when the complainant does not insist on a discovery ? Why shall equity sustain a bill to perpetuate evidence touching a forged deed^ and yet refuse to relieve effectually and promptly against the consequences of the fraud, the complainant not insisting on answer by way of discovery?
It would seem to be at the election of the complainant. to frame bis bill for present and effective relief, or to perpetuate his testimony to guard against future harm; and that the jurisdiction of a court of equity is as competent to give the one relief as the other.
Upon the question of fact, we can not. sustain-the decree which ordered the instrument to be delivered UP as a forgery. The complainant was the actor, and had taken upon himself to prove the forgery, and asks relief upon that allegation. He has not made nut his case. The complainant has very ingeniously connected with his questions, as to the signature of Everheart being genuine or forged, a comparison of that signature with the signature to the will, and the main force or strength of his testimony, is derived from that comparison. The witnesses who depose to the signature as being the proper hand writing of Everheart, preponderate in number, weight and effect due to the ground work and reasons of their judgment and belief.
Crittenden for plaintiff; Hardin and Manes for defendant.
The decree ordering the release and assignment 10 be delivered up, to be cancelled, as a forgery, is reversed, and the cause remanded to the court below, with directions to dismiss the bill with costs.